Vivian Wycliff **BUIE**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 25679.

United States Court of Appeals
Fifth Circuit.

Dec. 23, 1969.

Rehearing Denied Jan. 28, 1970.

Harold J. Fleming, Dallas, Tex., for appellant.

Robert S. Travis, Asst. U. S. Atty., Eldon B. Mahon, U. S. Atty., Fort Worth, Tex., for appellee; Joe Berl, Richard M. Hewitt, S. E. C., Fort Worth, Tex., of counsel.

Before THORNBERRY, GODBOLD and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from a conviction on fourteen counts of a twenty-one count

indictment involving two schemes to defraud. Appellant, together with two co-defendants, bought up cheap oil and gas leases and sold interests in them by falsely representing that the leases had great potential for production. The jury found appellant guilty of five counts of mail fraud, four counts of securities fraud, one count of use of the mails to sell unregistered securities, three counts of delivery of unregistered securities through the mails, and one count of conspiracy to effect mail and securities fraud. Appellant here brings twelve grounds of error. Having examined each ground carefully and found each to be without merit, we affirm.

■ Appellant first contends that he was deprived of due process by the prosecution's pretrial use of subpoenas returnable at the U. S. Attorney's office. While there may have been grounds upon which the persons subpoenaed might have been able to insist that these subpoenas be quashed, we cannot see how they could have prejudiced appellant. There is no showing of surprise. Furthermore, appellant was accorded the same subpoena privileges that the U. S. Attorney exercised.

■ Appellant next contends that the court erred in denying his motion for a bill of particulars. We find no merit, however, in appellant's conclusion that the indictment did not apprise him of the charges against him with sufficient specificity for him to prepare his defense. Furthermore, the standard for reversal on the basis of denial of a bill of particulars is abuse of discretion by the trial court, Reynolds v. United States, 5th Cir. 1955, 225 F.2d 123, which does not appear at all here. The trial court held a separate hearing on the motion before denying it.

■ Appellant makes several attacks on the sufficiency of the evidence to sustain most counts of the indictment. We find these attacks to be without merit, because the overwhelming weight of the evidence indicates the existence of the two schemes to defraud, appellant's knowing and willful complicity in them, and the mailing of a large number of soliciting letters, confirmations, reports, agreements, and other communications through the mails pursuant to the schemes. Several of appellant's arguments depend upon his contentions that the mailed communications were improperly admitted into evidence because of lack of a proper predicate; in each instance, however, a witness identified the communication as having been sent or received by him. Appellant also argues that the evidence is insufficient to show a scheme to defraud, because some of the flamboyant statements attributed to appellant were not expressly proved false at trial. The trouble with this argument is that numerous false representations made by appellant are shown by the evidence. Appellant also argues that there is no evidence to show that he wrote each individual letter or that he mailed it. There is testimony, however, from persons who worked with appellant, to the effect that he wrote all sales literature, and there is evidence that he actually deposited some letters in the mail himself. Furthermore, if appellant participated knowingly in a scheme by which mailing of these letters was effected, his participation alone is sufficient to sustain a conviction for mail and securities fraud whether his hand was the one that actually wrote and deposited the letters or not. Hanley v. United States, 5th Cir. 1969, 416 F.2d 1160.

■■ Next, appellant contends that the leases he was selling did not amount to investment contracts or securities as alleged in the portions of the indictment concerning securities laws violations. The leases, however, depended for their value upon services to be performed by appellant and his co-workers. The purchasers contributed nothing but money, and there can be no doubt that they looked solely to the efforts of appellant and his co-workers for expectation of

profit. The leases were therefore securities under the rule of SEC v. C. M. Joiner Leasing Corp., 1943, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88, which presents a closely similar fact situation. In this connection, it should be pointed out that the SEC apprised the co-conspirators several times that their schemes were subject to the securities laws, and that each time the co-conspirators suspended operations for a time but resumed later. As to the investment contract issue, appellant contends that the letters contained deprecatory language that prevented them from being contracts. We think, however, that the court is not bound in a securities laws case by boilerplate representations (such as obviously erroneous recitations that the purchaser was not relying on the sellers' efforts) but may consider all correspondence on which the agreements are based and infer their true substance. Roe v. United States, 5th Cir. 1961, 287 F.2d 435.

Appellant makes some thirty separate objections to the charge of the court, all contained in two of his grounds of error. The charge must be viewed as a whole when it is examined for possible error. Caples v. United States, 5th Cir. 1968, 391 F.2d 1018. Even inspecting each matter separately, however, we find appellant's attacks on the charge unmeritorious. For example, appellant's first objection is that the court refused to add the words "knowingly and wilfully" in eight separate places. The court overruled this objection, but it did so because it had already included the words "knowingly and wilfully" in at least five places in the charge, in addition to a general charge that all violations had to be proved to have been knowing and wilful. Appellant's other attacks on the charge are similarly unpersuasive.

Appellant next contends that the court erred in admitting certain items of hearsay evidence offered by the Government. The Government introduced three treatises on oil and gas reservoirs in Kansas, two of which were publications of the State of Kansas. The Government admits that these matters were of "questionable admissibility" and states no reason why they should have been received. Cf. C. McCormick, Evidence § 296 (1954). There is thus raised both a hearsay problem and a possible denial of appellant's constitutional right of confrontation. After examining the evidence carefully, however, we are convinced that if the admission of these matters was error, it was harmless error beyond a reasonable doubt. Cf. Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The treatises were offered to show that appellant's representations were false in that oil production from the areas he was concerned with was much lower than he claimed. Other overwhelming evidence was offered for this purpose: testimony of witnesses who worked with appellant and the testimony of expert witnesses. The falsity of the appellant's representations concerning the richness of the leases is established by the evidence to the point that it really is hardly an issue; indeed, the flamboyant statements almost give proof of their falsity on their face. The treatises were offered only because the expert said he knew of them, and they were not referred to again during the trial. Appellant also objects to the admission of well core analyses through this expert witness because the witness could not detail by personal observation the chain of transfer of the cores from the ground to their final resting place. This objection is without merit.

Appellant makes further attacks on the wording of the indictment and upon the admission of certain "miscellaneous" evidence. We have examined each of these arguments carefully and find them to be without merit. This case, which involved weeks of trial, was carefully and skillfully conducted both from the standpoint of proof of guilt and from the standpoint of fairness to the appellant.

The judgment must be affirmed.