UNITED STATES of America,
Plaintiff-Appellee,

v.

Bernard A. HORTON,
Defendant-Appellant.

No. 75–1530.

United States Court of Appeals,
Fifth Circuit.

Feb. 5, 1976.
Rehearing and Rehearing En Banc
Denied March 8, 1976.

George W. Reese, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before THORNBERRY, SIMPSON and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Bernard Horton was convicted by a jury of willfully and knowingly subscribing false income tax returns for the years 1968, 1969, and 1970. See 26 U.S.C. § 7206(1). Appellant's conviction followed from his understating on his returns for the years in question his gross receipts from the practice of law. The present appeal challenges that conviction on three grounds. We reject appellant's contentions and affirm his conviction.

■ In response to appellant's request pursuant to F.R.Cr.P. 7(f) for a bill of particulars, the Government stated that it intended to establish appellant's guilt by the "specific item" method of proof. Appellant now challenges the Government's later introduction—in Schedule VI and through the testimony of expert summary witness Rotolo—of evidence as to his total bank deposits in 1968, 1969, and 1970. He argues that introduction of this evidence created a fatal variance between the Government's asserted method of proof set out in the bill of particulars and the proof at trial and, more specifically, that evidence of total bank deposits is admissible only where the Government proceeds under the "net worth" theory. To be contrasted with the specific item method of proof, the net worth method hinges on a proven increase in the taxpayer's net worth during the period in question in an amount greater than that reported to IRS with the consequent implication of unreported income. See, e. g., United States v. Meriwether, 440 F.2d 753 (5th Cir. 1971), cert. denied, 417 U.S. 948, 94 S.Ct. 3074, 41 L.Ed.2d 668 (1974). The net worth method generates a circumstantial case laden with possibilities for error and is, in turn, circumscribed in its use by a number of limiting rules. See Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Merritt v. United States, 327 F.2d 820 (5th Cir. 1964). For example, the Government must establish opening net worth with reasonable certainty and must investigate and show false leads furnished by the taxpayer. E. g., Holland v. United States, 348 U.S. at 135–36, 75 S.Ct. at 135; Agoranos v. United States, 409 F.2d 833, 835 (5th Cir. 1969); Merritt v. United States, supra at 822–23.

■ The specific item method is, however, direct in its operation. The usual strategy with the latter method is for the Government to produce evidence of the receipt of specific items of reportable income by the defendant that do not appear on his income tax return or appear in diminished amount. United States v. Goldstein, 56 F.R.D. 52, 55 n.8 (D.Del. 1972); see Azcona v. United States, 257 F.2d 462 (5th Cir. 1958); Lloyd v. United States, 226 F.2d 9 (5th Cir. 1955). Appellant Horton's prosecution presents a good example of the specific item method of proof in income tax cases. Horton was a lawyer in New Orleans with an extensive criminal defense practice. Agents of IRS, working from records supplied by appellant and from records in the local court clerk's office that showed those cases in which appellant was attorney of record, derived the names of a large number of clients represented by Horton during 1968, 1969, and 1970. The agents then determined through a lengthy process of interviews the amounts paid to appellant as legal fees by those clients in the above years. Unfortunately for appellant, the amounts his clients were willing to testify to exceeded the amounts of gross receipts stated on his income tax returns. Relying on the testimony of appellant's clients, the Government successfully built its case and obtained a conviction.

■ We reject appellant's argument that use of evidence of total bank deposits created a fatal variance. In this appeal, as was the case at trial, the Government argues that evidence of total bank deposits was properly admissi-

ble in corroboration of the testimony of appellant's former clients as to amounts paid him in 1968, 1969, and 1970. Many of the former clients called by the Government possessed no documents or receipts to substantiate their claims of payment to appellant. The Government contends, correctly, that the evidence of total bank deposits corroborated this unsupported testimony as to the fact of payment. The corroborative feature of the bank deposits evidence proceeds apace with the implication that appellant handled and expended large sums of money, as would be expected if the specific item testimony were true. *See United States v. McGuire,* 347 F.2d 99 (6th Cir. 1965), *cert. denied,* 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed.2d 71 (1966); *McKenna v. United States,* 232 F.2d 431, 436–37 (8th Cir. 1956); *United States v. Nunan,* 236 F.2d 576, 588 (2d Cir. 1956), *cert. denied,* 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957). For this reason, appellant's fatal variance argument is inapposite. The evidence of total bank deposits during the years in question was properly admissible as corroborative evidence in this specific item prosecution and there was *no* variance.

■ Assuming for the purposes of argument only, however, that a variance did exist between the method of proof designated in the bill of particulars and the Government's introduction of the total bank deposits evidence, appellant has still failed to demonstrate that the variance was fatal to the Government's case. The purpose of the bill of particulars is to apprise the defendant of the charges against him with sufficient precision to enable him to prepare his defense, *e. g., United States v. Bearden,* 423 F.2d 805 (5th Cir. 1970), *cert. denied,* 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (1971), and this purpose is particularly well-served in complicated income tax prosecutions like the instant one. The usual manner in which questions as to bills of particulars reach this Court is on review of a district court's denial of a defendant's request for the bill. In such cases, the

standard of review is one of discretion; viz., did the district court abuse its discretion? *See, e. g., Buie v. United States,* 420 F.2d 1207 (5th Cir. 1969), *cert. denied,* 398 U.S. 932, 90 S.Ct. 1830, 26 L.Ed.2d 97 (1970); *Joseph v. United States,* 343 F.2d 755 (5th Cir. 1965), *cert. denied,* 382 U.S. 828, 86 S.Ct. 65, 15 L.Ed.2d 73 (1966). In the instant situation, where a fatal variance is argued, appellant must demonstrate that he was taken by surprise by reason of the variance and that such surprise prejudiced the preparation of his defense. *See United States v. Glaze,* 313 F.2d 757 (2d Cir. 1963); *cf. Buie v. United States, supra.* Appellant Horton has not made and cannot make the requisite demonstration. As early as the first day of trial, the Government stated and defendant acknowledged in their respective opening remarks that bank statements and other documents connected with four basic bank accounts used by appellant and his wife would be introduced and analyzed. First Supplemental Record on Appeal, Vol. I at 7, 15. Appellant cannot argue that the evidence of total bank deposits unreasonably impeded the adequate preparation of his defense by reason of surprise.

■ Appellant also challenges the refusal of the district court to give the jury an instruction limiting its consideration of the total bank deposits evidence to corroboration of the specific item testimony. The district court relied on *Azcona v. United States, supra,* to support its denial of the requested instruction. This was error. The *Azcona* opinion dealt with a district court's denial of an additional bill of particulars in a specific item prosecution; it did not address the problem of a limiting instruction on corroborative evidence. We hold that the district court erred in refusing the requested instruction. However, we also find the error to be harmless under the facts of the instant case. The evidence against appellant was overwhelming, and the bank deposits evidence was but an insignificant portion of the Government's total case. Moreover, the colloquy that

occurred between the Government, the defense attorney, and the bench in the presence of the jury when defense counsel objected to the introduction of this evidence served as the functional equivalent of a limiting instruction.

GOVERNMENT: Your Honor, we tender this schedule into evidence as corroborative evidence, not to be added to Exhibits 1 through 5 previously admitted, but as separate corroborative evidence to show the availability of cash as testified to by witnesses who have testified previously.

DEFENSE: I object to the introduction of all of this evidence as far as Schedule VI is concerned, Your Honor.

THE COURT: Objection overruled; let it be admitted.

GOVERNMENT:

Q Would you give us the total amounts shown on your schedules for the period we are concerned with, Mr. Rotolo?

A In 1968 the total deposits amounted to $31,511.80; in 1969, $52,499.25; in 1970, $43,835.99.

Q Now, did you prepare another schedule in connection with all the preceding schedules?

A Yes, sir. That's G–VII, I believe.

Q Would you identify that for us please?

THE COURT: Let me ask you first: These amounts the witness has mentioned as being total deposits, is it the government's contention that they represent the gross receipts on the books?

GOVERNMENT: No, Your Honor. Those figures are only in corroboration of the witnesses who have testified.

THE COURT: In 1970, for example, the understatement alleged here was $9,199.

THE WITNESS: That's inclusive of all the sources we used, Your Honor.

THE COURT: What?

GOVERNMENT: In other words, Your Honor, we have introduced evidence of four types of sources to indicate that $9,000 amount.

One of the important sources of that was the testimony of witnesses, who did not have receipts any longer that they paid, and we have intended to show, by this corroborative evidence, that there were bank deposits in this year of amounts which will justify belief in those witnesses that what they paid was received and deposited.

DEFENSE: And I have objected on the grounds that I previously stated, Your Honor.

THE COURT: I just don't want the jury to get the impression that this is an addition to the $9,000 already mentioned.

GOVERNMENT: Oh, no, sir.

THE COURT: All right; go ahead.

DEFENSE: Your Honor, also because of my previous objection to Government Exhibit VI, on the bank deposits, I also want to interpose an objection to Exhibit VII, where these figures are carried over in an attempt to summarize the figures, which I don't think is proper.

THE COURT: Objection overruled. Go ahead.

Second Supplemental Record on Appeal, Vol. I at 1062–64. Accordingly, the district court's refusal to give the limiting instruction was harmless error. *See Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Harbolt*, 491 F.2d 78 (5th Cir. 1974).

 As a second point of error, appellant attacks the Government's use of prior statements by appellant's clients, given to IRS agents at the time of their investigation, to refresh the memories of those witnesses at the time of trial. Appellant's contention is answered by this Court's opinion in *Esperti v. United States*, 406 F.2d 148, 150–51 (5th Cir.), *cert. denied, Farinella v. United States*, 394 U.S. 1000, 89 S.Ct. 1591, 22 L.Ed.2d 777 (1969).

It is hornbook law that any writing may be used to refresh the recollection of a witness. See Wigmore, Evidence § 758. This is true even where the

document itself would be inadmissible as evidence. *Williams v. United States*, 7 Cir. 1966, 365 F.2d 21. Caution must be exercised to insure that the document is actually being used for purposes of refreshing and not for purposes of putting words into the mouth of the witness. Such, however, is within the discretion of the trial judge.

*See Redfearn v. United States*, 375 F.2d 767 (5th Cir. 1967). It must be borne in mind that the reliability and credibility of witnesses is a matter for the trier of fact—here, the jury. *See Thompson v. United States*, 342 F.2d 137 (5th Cir.), *cert. denied*, 381 U.S. 926, 85 S.Ct. 1560, 14 L.Ed.2d 685 (1965). Moreover, where the issue, as here, is one of present recollection revived, the doctrine of contemporaneity has little application. *See Putnam v. United States*, 162 U.S. 687, 16 S.Ct. 923, 40 L.Ed. 1118 (1895). We perceive no abuse of discretion in the district court allowing the Government to refresh the witnesses' memories with their prior statements to IRS agents.

 As a final point of error, appellant challenges that portion of the Plan for Random Selection of Grand and Petit Jurors for the Eastern District of Louisiana which excuses operators of "one-man" businesses from jury duty upon request. We reject appellant's argument. In the first instance, the exclusion of sole proprietors is not automatic. On the contrary, it is necessary for such persons to request that they be excused from jury duty. This element of choice makes the present case analogous to that before the Court in *Camp v. United States*, 413 F.2d 419 (5th Cir. 1969), where the use of voter registration lists to compile a roster of potential jurors was approved. As the Court stated in *Camp*, persons choosing not to register to vote do not constitute a cognizable class capable of systematic exclusion from juries. 413 F.2d at 421. Likewise, sole proprietors requesting to be excused from juries in the Eastern District of Louisiana do not constitute a cognizable class systematically excluded from petit

juries. *See Labat v. Bennet*, 365 F.2d 698 (5th Cir. 1966); *cf. Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Curry v. Estelle*, 524 F.2d 981 (5th Cir. 1975). The categorical exclusion of certain occupational groups from jury duty is permissible on the "bona fide ground that it [is] for the good of the community that their regular work should not be interrupted." *Government of the Canal Zone v. Scott*, 502 F.2d 566, 569 (5th Cir. 1974), *quoting* Mr. Justice Holmes in *Rawlins v. Georgia*, 201 U.S. 638, 640, 26 S.Ct. 560, 561, 50 L.Ed. 899 (1906). The exclusion of sole proprietors upon request meets that standard.

The judgment of conviction in the instant case is in all respects affirmed.