T.C. Memo. 2004-66

UNITED STATES TAX COURT

BILL FRED HAMILTON AND CONNIE HAMILTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10228-95.                     Filed March 16, 2004.

Bill Fred Hamilton and Connie Hamilton, pro sese.

<u>Timothy S. Sinnott</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' Federal income taxes for 1988 of $170,225 with
additions to tax under sections 6653(b)[1] and 6661 of $127,669 and

_____

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

$42,556, respectively.[2]  After concessions, the issues for decision are:  (1) Whether petitioners failed to report income from mining activities in the amount of $515,993 for 1988.  We hold they did.  (2) Whether petitioner, Mr. Hamilton, is liable for an addition to tax for fraud pursuant to section 6653(b)(1) for 1988.[3]  We hold he is.  (3) Whether petitioners substantially understated their Federal income tax for 1988 within the meaning of section 6661.  We hold they did.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners, Bill Fred Hamilton (Mr. Hamilton) and Connie Hamilton (Mrs. Hamilton), husband and wife, resided in Barbourville, Kentucky, at the time they filed the petition.

Mr. Hamilton was engaged in the business of brokering coal during 1982 through 1989.  Mr. Hamilton owned a 50-percent interest in C.Y. Smith Corp. (CYS), a corporation engaged in mining and brokering coal.  He also indirectly managed and ran the day-to-day operations of R & B Excavating, Inc. (RBE), an

---

[2]  Respondent has conceded a portion of the deficiency amount.

[3] Respondent concedes that Mrs. Hamilton is not liable for a fraud-related addition to tax under sec. 6653(b).

entity engaged in the hauling and excavation of coal.[4]  During 1988, Mrs. Hamilton was employed by Heart and Soul Coal, Inc. (H&S), where she was responsible for taking coal samples to third parties for analysis.  She was also employed by CYS and did some work for RBE.

In 1988, Mr. Hamilton had various bank accounts with American Fidelity Bank in Kentucky.  Petitioners' numerous bank transactions with Fidelity during 1988 underlie the present action.  Throughout 1988, Mr. Hamilton frequently visited Fidelity and presented Fidelity's bank tellers with checks that were drawn on accounts of various coal-related companies and made payable to other coal-related companies as well as to "cash".  Mr. Hamilton would endorse the checks and, in return, receive large amounts of cash.  Occasionally, Mr. Hamilton would, instead of receiving cash, purchase cashier's checks payable to himself.  In most of the transactions, Mr. Hamilton would request and receive cash in amounts ranging between $9,000 and $9,999.[5]  If

---

[4]  Petitioners' daughter, Michelle Hamilton, was the Corporate officer of RBE during 1988, but Mr. Hamilton conceded that he ran the business and was responsible for the day-to-day operations.

[5]  Under 31 U.S.C. sec. 5313(a)(2000), Fidelity, as a financial institution, was required to file a currency transaction report (CTR) involving cash transactions in excess of $10,000.  It was Fidelity's policy to prepare CTRs for customers who frequently cashed checks for large sums of money, even if such amounts were less than $10,000.  During 1988, over 40 CTRs were prepared involving petitioners' transactions with Fidelity.

the amount of the check exceeded the cash amount received by Mr. Hamilton, he would then either deposit these excess funds into RBE's account, or use them to purchase cashier's checks payable to other coal companies. In total, Mr. Hamilton was involved in 52 separate transactions during 1988 in which he received cash or self-directed cashier's checks totaling $510,888. Mrs. Hamilton conducted two such transactions during 1988 in which she received a total of $5,105 in cash. Overall, the entire amount petitioners received in 1988 from their transactions with Fidelity totaled $515,993.

Petitioners timely filed their joint Federal income tax return for 1988 on which they reported an adjusted gross income of $21,840. That income comprised $7,600 in wage income Mrs. Hamilton received from H&S, interest income of $3,040, a dividend payment of $8,500, and sick pay in the amount of $2,700. Petitioners did not report any portion of the cash that they had received from the bank transactions with Fidelity.

Petitioners were criminally indicted for willfully filing false Federal income tax returns for 1987 and 1988 in violation of section 7206(1). The indictment charged them with receiving income of $542,106 from the sale of coal that they failed to report on those returns. See United States v. Hamilton, 128 F.3d 996, 998 n.1 (6th Cir. 1997). Mr. Hamilton was also charged with willfully failing to file a Federal income tax return for 1989 in violation of section 7203.

Mr. Hamilton was found guilty on all counts and was consequently sentenced to 27 months of imprisonment. Mrs. Hamilton was convicted of willfully filing a false Federal tax return for 1987 but was acquitted of these charges relating to 1988, the year at issue. She was sentenced to 6 months of home detention and 2 years' probation.

Respondent issued to petitioners a notice of deficiency for 1988 determining that petitioners failed to include $515,993 in income and determining that petitioners were liable for fraud and substantial understatement additions to tax. Petitioners timely filed their petition with this Court contesting the notice of deficiency.

OPINION

A. Whether Petitioners Understated Their Income for 1988

Taxpayers are required to maintain sufficient records to allow a determination of their correct tax liabilities. Sec. 6001. Where a taxpayer fails to keep the required records, or if the records he or she maintains do not clearly reflect income, then the Commissioner may reconstruct the taxpayer's income in accordance with a method that clearly reflects the full amount of income received. See sec. 446; Parks v. Commissioner, 94 T.C. 654, 658 (1990); Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989). The reconstruction need only be reasonable in light of

all surrounding facts and circumstances. See <u>Giddio v. Commissioner</u>, 54 T.C. 1530, 1533 (1970); <u>Schroeder v. Commissioner</u>, 40 T.C. 30, 33 (1963).

Respondent determined that petitioners understated their income for 1988 by $515,993--the total amount of cash and cashier's checks petitioners received in their numerous bank transactions during the year. In arriving at this determination, respondent used the "specific-item" method to reconstruct petitioners' income, relying on evidence of petitioners' receipt of specific items of reportable income that did not appear on their income tax return. See <u>United States v. Horton</u>, 526 F.2d 884, 886 (5th Cir. 1976); <u>Estate of Beck v. Commissioner</u>, 56 T.C. 297, 353 (1971); <u>Seidenfeld v. Commissioner</u>, T.C. Memo. 1995-62.

At trial, respondent produced clear and convincing evidence demonstrating that petitioners received $515,993. Respondent presented the checks, bearing petitioners' endorsements, that petitioners either deposited or cashed in the transactions at issue. He also introduced the cash-out tickets from these transactions that bore petitioners' names. Finally, respondent produced testimony from numerous Fidelity bank tellers and employees that it was Fidelity's policy in 1988 to require customers to endorse checks that they presented to be cashed and that it was Fidelity's policy to give the cash to the last person endorsing the check. They also testified that when they handed

cash to a customer, they were required to complete a cash-out ticket that listed both the amount given as well as the name of the individual receiving the cash. These witnesses also testified as to their personal knowledge of Mr. Hamilton's involvement in these transactions.[6] We find this evidence to unequivocally demonstrate that petitioners received the amount indicated by respondent.

At trial, Mr. Hamilton contended that some of the cash amounts received was used to pay for business expenses. Specifically, Mr. Hamilton claimed that he had receipts showing that a large portion of the cash at issue was used to purchase coal for the account of H&S. Petitioners did not, however, produce the receipts or otherwise present any books, records, or other testimony that would support this assertion.

Once the Commissioner has validly reconstructed a taxpayer's

---

[6] At trial, Mr. Hamilton argued that he never received a significant portion of the cash from the transactions at issue. Rather, he argued that other individuals signed his name to the checks without his permission to avoid certain cashing restrictions and fees imposed on individuals who did not have an account with Fidelity. Further, Mr. Hamilton argued that the bank tellers perjured themselves both in the civil and criminal trials when they testified that he was the one who received the money. Unsurprisingly, petitioner did not produce any testimony (other than his own) or evidence supporting his position at trial. After trial, along with his posttrial brief, Mr. Hamilton submitted two affidavits purportedly taken from individuals involved in several of these transactions to support his contention that he did not receive the funds. His failure to produce the evidence at trial, however, cannot be remedied on brief, as the evidentiary record is closed. See Rule 143(b).

income, the burden is on the taxpayer to demonstrate that the Commissioner's determination is erroneous.  <u>Mallette Bros. Constr. Co. v. United States</u>, 695 F.2d 145, 148-149 (5th Cir. 1983); <u>Kling v. Commissioner</u>, T.C. Memo. 2001-78; <u>Seidenfeld v. Commissioner</u>, T.C. Memo. 1995-61.  In deciding whether petitioners have carried their burden of proof, witness credibility is an important consideration.  See <u>Ishizaki v. Commissioner</u>, T.C. Memo. 2001-318.  The only support for Mr. Hamilton's use of the cash to pay for business expenses is his own uncorroborated and self-serving testimony, which we are not required to accept, and which we do not, in fact, find to be credible.  See <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 219 (1992).  Accordingly, petitioners have failed to meet their burden, and thus we sustain respondent's determination that petitioners failed to report $515,993 of income in 1988.

B.  <u>Whether Mr. Hamilton Is Liable for the Fraud Addition to Tax Under Section 6653</u>

Section 6653(b)(1) provides that if any part of a taxpayer's underpayment is due to fraud, an addition to tax equal to 75 percent of the underpayment will be imposed.  Further, if any portion of the underpayment is attributable to fraud, the entire underpayment will be treated as attributable to fraud unless the taxpayer establishes otherwise.  Sec. 6653(b)(2).  In order for the fraud additions to tax to apply, the Commissioner must prove by clear and convincing evidence that an underpayment exists and that some portion of the underpayment is attributable to fraud.

Sec. 7454(a); Rule 142(b); <u>Niedringhaus v. Commissioner</u>, <u>supra</u> at 210.

1. <u>Underpayment</u>

When an allegation of fraud is intertwined with reconstructed unreported income, as in the present case, the Commissioner may satisfy the burden of establishing an underpayment by either proving a likely source of the unreported income, or disproving the nontaxable source(s) that the taxpayer alleges for the unreported income. <u>Parks v. Commissioner</u>, 94 T.C. 654, 658 (1990).

We have already found that respondent established by clear and convincing evidence that petitioner received amounts totaling $515,993 in 1988. On the instant record, we now find that respondent has established by clear and convincing evidence a likely source of petitioner's unreported income for 1988; namely, petitioner's coal businesses. Accordingly, we hold that respondent has established by clear and convincing evidence that petitioner underpaid his Federal income taxes for 1988.

2. <u>Fraudulent Intent</u>

The existence of fraud is a question of fact. See <u>Hagaman v. Commissioner</u>, 958 F.2d 684, 696 (6th Cir. 1992), affg. and remanding T.C. Memo. 1987-549. To establish fraud, Commissioner must show that taxpayer "engaged in conduct with the intent to evade taxes" that "he knew or believed to be owing." <u>United States v. Walton</u>, 909 F.2d 915, 926 (6th Cir. 1990). Because direct evidence of fraud is rarely available, it may be inferred

from circumstantial evidence. See id.; Traficant v. Commissioner, 884 F.2d 258, 264 (6th Cir. 1989), affg. and remanding 89 T.C. 501 (1987).

Courts have looked to several items of circumstantial evidence--often referred to as "badges of fraud"--in determining whether the taxpayer acted fraudulently. The items relevant in the instant case are: (1) The understatement of income over an extended period of time, (2) failure to maintain adequate books and records, (3) dealing in cash and cashier's checks, (4) concealment of assets, and (5) filing false tax returns. See Conti v. Commissioner, 39 F.3d 658, 662 (6th Cir. 1994), affg. and remanding 99 T.C. 370 (1992); Smith v. Commissioner, 926 F.2d 1470, 1479 (6th Cir. 1991), affg. 91 T.C. 1049 (1988); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. T.C. Memo. 1982-603; Petzoldt v. Commissioner, 92 T.C. at 700; Wright v. Commissioner, 84 T.C. 636, 643-644 (1985). Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive evidence of fraud. See Solomon v. Commissioner, supra at 1461; Petzoldt v. Commissioner, supra at 700.

We are convinced after applying these criteria to Mr. Hamilton's situation that Mr. Hamilton's underpayment of taxes was due to fraud. First, Mr. Hamilton's failure to report the amounts received in the numerous transactions with Fidelity

in 1988, coupled with his understatement of income for 1987 and 1989 as evidenced in his criminal convictions for those years, evinces a pattern of consistent understatement and thus constitutes evidence of fraud. Mr. Hamilton's fraudulent intent is further shown by his extensive dealings in cash and cashier's checks. During 1988 Mr. Hamilton conducted 52 separate transactions in which he withdrew over $500,000 in cash and cashier's checks. Not only did Mr. Hamilton obtain this money in cash form, he also conceded at trial that he structured most of these transactions to intentionally avoid the Federal reporting requirements of 31 U.S.C. sec. 5313(a). These circumstances suggest that Mr. Hamilton dealt extensively with cash for the purpose of avoiding any scrutiny of his finances and did so with the intent to conceal income.

It is also clear from the record that Mr. Hamilton failed to maintain adequate books and records with respect to the mining activities. Mr. Hamilton maintained no books for any of the companies in which he had an ownership or management interest. He also did not keep any records of the amounts deposited or received in the numerous bank transactions with Fidelity or of any other income he received or expenses he incurred in connection with the mining activities. His failure to keep track of this cashflow constitutes further evidence of fraud.

Finally, Mr. Hamilton was convicted for willfully filing a false tax return for the year at issue in violation of section 7206(1). While a conviction under section 7206(1) does not

collaterally estop a taxpayer from denying that he acted fraudulently for purposes of section 6653(b), it does constitute persuasive evidence of fraud. See Morse v. Commissioner, T.C. Memo. 2003-332; Parsons v. Commissioner, T.C. Memo. 2000-205; Biaggi v. Commissioner, T.C. Memo. 2000-48, affd. 8 Fed. Appx. 66 (2d Cir. 2001). Further, absent credible evidence showing that the willful filing of the false tax return was done for a purpose other than defrauding the Government of taxes owed, the conviction under section 7206(1) is highly persuasive evidence that fraud was committed. Mr. Hamilton failed to proffer any evidence demonstrating that his willful filing of a false tax return for 1988 was done for any reason other than evading Federal income taxes owed for that year. Accordingly, this constitutes highly persuasive evidence that Mr. Hamilton acted fraudulently.

Thus, upon consideration of the entire record, we find that respondent has proven by clear and convincing evidence that Mr. Hamilton acted with the requisite fraudulent intent, and that the entire understatement of income for 1988 is due to fraud. We therefore sustain respondent's determination that Mr. Hamilton is liable for the addition to tax for fraud under section 6653(b).

C.   Whether Petitioners Are Liable for Additions to Tax for Their Substantial Understatement of Tax for 1988

Section 6661(a) provides for a 25-percent addition to tax for the substantial understatement of income tax. An "understatement" is defined as the excess of the tax required to

be shown on the return over the tax actually shown on the return, and is considered substantial if it exceeds the greater of 10 percent of the tax owing or $5,000.  Sec. 6661(b)(1)(A) and 6661(b)(2)(B).  Where the taxpayer shows that he or she had a reasonable cause for, and that he or she acted in good faith with respect to, the underpayment, the Secretary may waive the section 6661 additions.  Sec. 6661(c).  It is taxpayers, however, who bear the burden of proving that Commissioner erred in imposing the addition to tax under section 6661.  Rule 142(a)(1).

On their joint Federal income tax return for 1988 petitioners reported a tax due of $1,939.  Because petitioners failed to report more than $500,000 in income, the threshold of section 6661(a) is clearly met.  Petitioners have offered no evidence or argument that they are not liable for the addition to tax under section 6661(a).  Accordingly, we sustain respondent's determination that petitioners are liable for the addition to tax under section 6661(a) for the substantial understatement of income tax.

To reflect the foregoing,

Decision will be entered under Rule 155.